UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**JOE HAND PROMOTIONS, INC.**                               **CIVIL ACTION**

**VERSUS**                                                  **No. 13-4912**

**LEROY BONVILLAIN ET AL.**                                 **SECTION I**

## ORDER AND REASONS

Before the Court is a motion[1] for a default judgment filed by plaintiff, Joe Hand Promotions, Inc. For the following reasons, the motion is **GRANTED**.

### BACKGROUND

According to the facts alleged in the complaint, plaintiff acquired the right to distribute the UFC 125: Resolution Broadcast ("Broadcast"), which event was scheduled to be transmitted on January 1, 2011.[2] On that date, defendants, Leroy Bonvillain et al., "unlawfully intercepted, received and/or de-scrambled" the satellite signal associated with the Broadcast, and they exhibited it at the All Star Karaokee[3] Lounge in Houma, Louisiana "for purposes of direct or indirect commercial advantage or private financial gain," all in violation of 47 U.S.C. § 605(a).[4]

According to the affidavit of Joe Hand, Jr., President of Joe Hand Promotions, Inc., plaintiff marketed the exhibition rights for the Broadcast to commercial customers such as bars, restaurants,

---

[1] R. Doc. No. 12.
[2] R. Doc. No. 1, ¶ 11.
[3] This spelling is used throughout plaintiff's complaint and briefing.
[4] R. Doc. No. 1, ¶¶ 10, 14. The complaint also alleges a violation of 47 U.S.C. § 553 and a conversion claim. Acknowledging that it may not recover under both § 605(a) and § 553, plaintiff has moved for default judgment only as to the § 605(a) claim. R. Doc. No. 12-1, at 5-6.

and nightclubs.[5] Plaintiff provided to auditors and law enforcement agencies a confidential list of customers who had paid the requisite license fee.[6] The fee varied depending on the capacity of the venue, which was determined according to the maximum occupancy allowed by the fire code.[7]

According to the affidavit of James Osgood ("Osgood"), one of plaintiff's auditors, Osgood visited the All Star Karaokee Lounge on the night of the Broadcast, where he observed the Broadcast playing on two television sets,[8] notwithstanding the fact that defendants had not paid the fee required to access the Broadcast.[9] Osgood spent approximately 15 minutes at the venue, during which time the crowd varied from approximately 28 to 35 people.[10] He estimated the total capacity to be approximately 60 people.[11] Based on this estimate, the fee for the All Star Karaokee Lounge to lawfully access the Broadcast would have been between $900 (for a capacity of 50 or fewer people) and $1,100 (for a capacity of 51 to 100 people).[12]

## LAW AND ANALYSIS

Despite being served,[13] defendants failed to answer plaintiff's complaint, and the Clerk of Court entered a preliminary default on September 5, 2013.[14] *See* Fed. R. Civ. P. 55(a). Plaintiff moved for a default judgment on October 28, 2013,[15] and defendants have not filed any response.

---

[5] R. Doc. No. 12-2, at 1-2.
[6] R. Doc. No. 12-2, at 2.
[7] R. Doc. No. 12-2, at 2.
[8] R. Doc. No. 12-5, at 1.
[9] R. Doc. No. 12-5.
[10] R. Doc. No. 12-5, at 1-2.
[11] R. Doc. No. 12-5, at 2.
[12] R. Doc. No. 12-2, at 2-3; R. Doc. No. 12-4.
[13] R. Doc. Nos. 5-7.
[14] R. Doc. No. 10.
[15] R. Doc. No. 12.

Although Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that the Court may hold an evidentiary hearing on this motion, plaintiff does not request such a hearing.[16]

Accepting the allegations of fact in the complaint, the Court finds that plaintiff has sufficiently established its § 605(a) claim, including that defendants' acted "willfully and for purposes of direct or indirect commercial advantage or private financial gain" pursuant to §605(e)(3)(C)(ii). *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

The Court turns to the issue of damages. In its motion, defendant seeks $10,000 in statutory damages, $50,000 in enhanced damages, $3,680 in attorney's fees, and $1,465.00 in costs.[17]

**I. Statutory Damages**

Plaintiff has elected to pursue statutory, rather than actual, damages pursuant to § 605(e)(3)(C)(i)(II).[18] This subsection provides, in pertinent part, that an aggrieved party "may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just."

In determining statutory damages pursuant to this subsection, courts have adopted several different approaches. In some cases courts impose a "flat sum for damages," while in other cases courts calculate a sum "based on the number of patrons in the establishment at the time of the violation." *J & J Sports Prods., Inc. v. Kuo*, No. 07-75, 2007 WL 4116209, at *4 (W.D. Tex. Nov. 15, 2007). Still other cases involve the imposition of "the cost of the appropriate licensing fee proportional to the size of the business had the business legally aired the program." *Joe Hand*

---

[16]R. Doc. No. 12, at 1.
[17]R. Doc. No. 12-1, at 11.
[18]R. Doc. No. 12-1, at 6.

*Promotions, Inc. v. Krist*, No. 12-01877, 2013 WL 3756439, at *2 (W.D. Pa. July 15, 2013). Each of these methods provides a different approach to determining a "just" amount.

In this case, the license fee proportional to the size of the business would have been between $900 and $1,100, but "[t]here would be no incentive to cease the violation if the penalty were merely the amount that should have been paid." *Entm't by J & J, Inc. v. Al-Waha Enters., Inc.*, 219 F. Supp. 2d 769, 776 (S.D. Tex. 2002) (quoting *Entm't by J & J Inc. v. Nina's Rest. & Catering*, No. 01-5483, 2002 WL 1000286, at *3 (S.D.N.Y. May 9, 2002)).

Those courts that have assessed damages based on the number of patrons present at the time of the violation were provided with evidence as to the cost each patron would have had to pay to purchase the event for private viewing at a residence. *J & J Sports Prods., Inc. v. Guzman*, 553 F. Supp. 2d 195, 198-99 (E.D.N.Y. 2008) (citing cases). The Court was not provided with this information in the instant motion. Nonetheless, a small sampling of cases suggests that this amount is often approximately $55.00. *See id.* (discussing cases involving fees of $50.00 or $54.95); *Kuo*, 2007 WL 4116209, at *4 (using $54.95); *see also Joe Hand Promotions, Inc. v. Elmore*, No. 11-3761, 2013 WL 2352855, at *7 (E.D.N.Y. May 29, 2013) (using $54.95 where plaintiff did not present evidence of the individual fee for a residence). Using 35 patrons – the highest number observed by the auditor – at a rate of $55 each, the total statutory damages would amount to $1,925. The Court finds $1,925, which is also approximately twice what the license fee would have been, to be a just amount under the circumstances.

## II. Enhanced Damages

Section 605(e)(3)(C)(i)(II) permits the Court to increase a damage award by up to $100,000 for each violation where defendants "acted willfully and for purposes of direct or indirect

commercial advantage or private financial gain." Here, the complaint and evidence submitted with the motion for entry of default judgment support the application of this subsection.

The Court finds, however, "no evidence that [defendants] demanded a cover charge of their patrons, charged a premium for the food and drink they sold during the broadcast, or have repeatedly intercepted programs in violation of section 605."[19] *Kuo*, 2007 WL 4116209, at *5. Taking into account the evidence set forth in the record, the need to deter violations of the law, and the willful nature of the violation at issue here, the Court concludes that enhanced damages are warranted in the amount of $3,850, which reflects twice the statutory damages and which is between three and four times the license fee for the establishment.

### III. Attorney's Fees and Costs

Plaintiff seeks to recover attorney's fees in the amount of $3,680 and costs in the amount of $1,165.[20] The Court declines to award fees or costs because of insufficient support in the record.[21] *See Joe Hand Promotions, Inc. v. Bryson*, No. 13-776, 2013 WL 5743710, at *2 & n.3. (D.S.C. Oct. 23, 2013) (declining to award attorney's fees based on insufficient support); *Krist*, 2013 WL 3756439, at *3 (declining to award attorney's fees or costs based on insufficient support).

---

[19]*See* R. Doc. No. 12-5.

[20]R. Doc. No. 12-1, at 11.

[21]These amounts are set forth in the motion, but the motion contains no detail as to their basis. Joe Hand, Jr.'s affidavit simply requests that the Court award "our legal costs along with the attorneys' fees counsel has requested." R. Doc. No. 12-2, at 6.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that plaintiff's motion for default judgment is **GRANTED** as to plaintiff's § 605 claim, and that judgment is entered in favor of plaintiff and against defendants in the amount of $5,775.

**IT IS FURTHER ORDERED** that plaintiff's other claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, November 5, 2013.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**